## APPEAL OF WALTER J. SALMON.

Docket No. 3115.   Submitted October 12, 1925.   Decided February 13, 1926.

Value of a leasehold on March 1, 1913, determined.

*Albert M. Barnes, Jr., Esq.*, for the taxpayer.
*M. N. Fisher, Esq.*, for the Commissioner.

Before SMITH, LITTLETON, and TRUSSELL.

This is an appeal from the determination of a deficiency in income tax for 1919 and 1920 in the aggregate amount of $19,253.23. The question in issue is the value on March 1, 1913, of a leasehold in which the taxpayer owned a one-half interest acquired in 1902.

### FINDINGS OF FACT.

The taxpayer is a resident of New York City. In 1902 he acquired a 20-year lease beginning May 1, 1902, and ending April 30, 1922, on a building known as the Bristol Building, situated on the northwest corner of Fifth Avenue and Forty-second Street, New York City. The lot fronted 74½ feet on Fifth Avenue and 125 feet on Forty-second Street, and was improved with a seven-story building which had theretofore been used as a hotel. The agreed rental was $55,000 a year, which amount was to be net to the lessor, the lessee agreeing to pay all taxes, insurance, repairs, and all operating charges.

The first floor of the building consisted of 10 stores, which were soon rented for varying periods. The corner store was leased for the full term of the lease of the building, the sublease expiring April 30, 1922. The second floor was known as the mezzanine floor, and was used for tailoring shops, showrooms, etc. There were six upper floors that were rented for offices. All of the subleases carried provisions whereby they might be canceled on payment of certain stipulated bonuses. On March 1, 1913, the entire building might have been cleared of tenants on the payment of such bonuses in the amount of $128,850.

The rentals collected, the operating costs, including taxes, insurance, etc., and the profits to the lessee for the full period of the lease were as follows:

| Period. | Rentals collected. | Total expenses. | Profit. |
| --- | --- | --- | --- |
| May 1, 1902, to Dec. 31, 1903 | $96,238.59 | $116,401.46 | [1] $20,162.87 |
| Jan. 1, 1904, to Dec. 31, 1904 | 119,218.77 | 96,644.93 | 22,573.84 |
| Jan. 1, 1905, to Dec. 31, 1905 | 123,202.30 | 96,410.51 | 26,791.79 |
| Jan. 1, 1906, to Dec. 31, 1906 | 136,761.23 | 104,646.79 | 32,114.44 |
| Jan. 1, 1907, to Dec. 31, 1907 | 137,279.87 | 99,273.14 | 38,006.73 |
| Jan. 1, 1908, to Jan. 31, 1909 | 151,130.00 | 112,355.06 | 38,774.94 |
| Feb. 1, 1909, to Jan. 31, 1910 | 139,965.05 | 109,791.33 | 30,173.72 |
| Feb. 1, 1910, to Jan 31, 1911 | 148,578.94 | 112,462.50 | 36,116.44 |
| Feb. 1, 1911, to Jan 31, 1912 | 149,834.26 | 117,413.17 | 32,421.09 |
| Feb. 1, 1912, to Jan. 31, 1913 | 171,823.23 | 123,390.43 | 48,432.80 |
| Feb. 1, 1913, to Jan. 31, 1914 | 188,432.58 | 134,633.01 | 53,799.57 |
| Feb. 1, 1914, to Jan. 31, 1915 | 194,483.42 | 129,208.11 | 65,275.31 |
| Feb. 1, 1915, to Jan. 31, 1916 | 192,305.87 | 130,684.68 | 61,621.19 |
| Feb. 1, 1916, to Jan. 31, 1917 | 217,710.38 | 153,338.69 | 64,371.69 |
| Feb. 1, 1917, to Jan. 31, 1918 | 231,213.05 | 164,973.59 | 66,239.46 |
| Feb. 1, 1918, to Jan. 31, 1919 | 237,323.33 | 163,870.48 | 73,452.85 |
| Feb. 1, 1919, to Jan. 31, 1920 | 278,944.41 | 158,088.27 | 120,856.14 |
| Feb. 1, 1920, to Jan. 31, 1921 | 317,663.68 | 177,338.05 | 140,325.63 |
| Feb. 1, 1921, to Jan. 31, 1922 | 330,771.52 | 173,344.42 | 157,427.10 |
| Feb. 1, 1922, to Apr. 30, 1922 | 86,379.07 | 26,619.18 | 59,759.89 |

[1] Loss.

For many years prior to 1910, the retail business section in New York City had centered around Sixth Avenue and Twenty-third Street. The establishment of manufacturing industries in that section made it undesirable for retail businesses; they first located at Twenty-third Street and Broadway and moved up first to Thirty-fourth Street between Broadway and Fifth Avenue and spread north to Fifth Avenue up to Forty-second Street, and certain of the specialty shops moved up between Forty-second Street and Forty-eighth Street. In 1911 Stearn abandoned his location on Twenty-third Street and located at Forty-second Street and Sixth Avenue.

All of these factors centered the attention of the real estate interests in New York City upon the locality of Forty-second Street and Fifth Avenue. Tenants on that street, in the vicinity of Fifth Avenue, were offered good bonuses for their leases. There were many deals pending in 1913 and 1914, and long-term leases on desirable properties were in great demand.

In his income-tax returns for 1919 and 1920, the taxpayer reported the fair market value of the lease on the Bristol Building on March 1, 1913, to have been $652,641.32, and that the amount deductible from gross income by the lessees for each of the years 1919 and 1920 was $70,555.82, half of which was claimed by the taxpayer.

The fair value of the leasehold on the Bristol Building at March 1, 1913, was $262,025.82. A reasonable amount for the exhaustion of the taxpayer's interest in the leasehold for each of the years 1919 and 1920 was $14,192.31.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on 10 days' notice, in accordance with Rule 50.

### OPINION.

SMITH: The taxpayer had a one-half interest in a leasehold which was acquired in 1902, the lease expiring April 30, 1922. The leasehold had a large cash value at March 1, 1913. The taxpayer is entitled to deduct from gross income for each of the years 1919 and 1920 an amount representing the annual exhaustion of the leasehold. *Appeal of Grosvenor Atterbury*, 1 B. T. A. 169.

In his income-tax returns for the years 1919 and 1920, the taxpayer claimed that the fair market value of the leasehold on March 1, 1913, was $652,641.32; that this value should be spread ratably over the 9 years and 2 months that the lease had to run from March 1, 1913, to the date of expiration, April 30, 1922; that the exhaustion deduction allocable to each of the years 1919 and 1920 was $70,555.82; and that the taxpayer, having a one-half interest in the leasehold, was entitled to a deduction for exhaustion of $35,277.91 for each year.

In support of this appeal the taxpayer has placed in evidence appraisals of the leasehold by two real estate experts of New York City. One expert has given the leasehold a value on March 1, 1913, of $800,496, based on the fair market value of the land and buildings, and of $739,203, based on the fair rental value of the property as follows:

| | |
|---|---:|
| Fair market value of land | $3,000,000 |
| Fair market value of building | 225,000 |
| Allowing 5 per cent interest on land and 6 per cent interest on the building and applying the Inwood formula, the estimated value of the leasehold is | 800,496 |
| Fair annual rental from entire building | 258,750 |
| Less 40 per cent for operating, taxes, insurance, etc | 103,500 |
| Less $55,000 annual rental of lease | 55,000 |
| Net annual income from property | 100,250 |
| Value of leasehold on March 1, 1913 | 739,203 |

The appraised value of the leasehold was placed by the other expert at $793,000 as of March 1, 1913. Both appraisals were made in 1925.

In the light of the actual earnings, we think that the appraisals made by the expert appraisers of the value of the leasehold in question as of March 1, 1913, are much too high. In the determination of the value of the leasehold at March 1, 1913, one of the appraisers has stated that the fair annual rental from the entire building as of March 1, 1913, was $258,750. This was greatly in excess of the rentals collected for the fiscal year ended January 31, 1913, or for any year prior to that ended January 31, 1920. There was a gradual increase in the total rentals collected, a portion of which increase was reflected in the profit from the leasehold, but we do not think that it was possible in 1913 to foresee the greatly increased rentals of the years subsequent to 1919. The lessees' profits were subject to the hazards of business. Even though the rentals might increase in amount, the proportionate part of such increase which would be reflected in profits was uncertain. It is noted that from February 1, 1910, to January 31, 1916, the average annual profit from the lease was $49,611.06. In our opinion, it was impossible for the lessees to foresee on March 1, 1913, a greater profit per year from the operation of the property for the period March 1, 1913, to April 30, 1922, than $49,611.06. We are of the opinion that, in the determination of the cash value of the leasehold, it should be considered that it would earn only $49,611.06 per year for nine years and two months. The then cash value of such a leasehold is $262,025.82, which we have found as a fact to be the cash value of the leasehold on March 1, 1913. The amount of the exhaustion allocable to each year is $28,-584.63, one-half of which, or $14,192.31, is a legal deduction from the annual gross income of the taxpayer in his income-tax returns.